UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GRITMAN MEDICAL CENTER, INC., | Case No. 3:22-cv-00382-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| ALLSCRIPTS HEALTHCARE SOLUTIONS INC. and BECKMAN COULTER, INC., | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is Defendant Beckman Coulter, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. (Dkt. 8). For the reasons explained below, the Court will grant the motion to dismiss but will allow the Plaintiff to amend its complaint.

## BACKGROUND[1]

---

[1] At this early stage in the litigation, the Court must assume the truth of Gritman's factual allegations. This does not mean, however, that the Court believes those allegations. Rather, the Court makes no determination whatsoever as to the truth or falsity of the factual assertions in the Complaint.

**MEMORANDUM DECISION AND ORDER - 1**

Gritman Medical Center, Inc. ("Gritman") is a hospital based in Latah County, Idaho. In 2016, Gritman purchased a UniCel DxC 600i Synchron Access Clinical System machine ("DxC 600i" or the "machine") from Beckman Coulter, Inc. ("Beckman"), a manufacturer of medical laboratory instruments and equipment.

## 1.     The DxC 600i

The DxC 600i is a laboratory machine developed by Beckman to detect prostate cancer. The machine analyzes a patient's blood sample to detect the levels of prostate-specific antigen (PSA) secreted by the prostate gland. While threshold levels of acceptable PSA in the bloodstream increase with age, higher levels are considered a clinical indicator of prostate cancer, and the FDA approved PSA testing as a cancer screening method in 1994.

There are various enzymes and proteins that comprise total PSA (tPSA), including free PSA (fPSA—not bound to a protein) and ProPSA (p2PSA—a proenzyme from which a propeptide is removed). Beckman developed a mathematical equation to synthesize the levels of fPSA, p2PSA, and tPSA in a patient's bloodstream into a "Prostate Health Index" (PHI) score that indicates whether the patient has, or is at risk for, prostate cancer. The PHI was approved by the FDA in 2012 as a cancer screening method for men with tPSA levels within a

certain range.

The DxC 600i is designed to detect the PSA levels in the patient's blood sample, run the equation, and calculate the PHI score. The PHI score is then transmitted to the hospital or clinic's electronic health records ("EHR") management system.[2] In addition, it appears from the allegations in the Complaint that the machine does not automatically calculate a PHI score for every patient, but only those with certain overall PSA values. When such a PSA value is detected, the DxC 600i will automatically "reflex" and check the fPSA and, if necessary, p2PSA levels, and then calculate a PHI.

## 2.      The Transaction and Machine Setup

Sometime in 2016, Gritman purchased the DxC 600i from Beckman. A Beckman technician assisted in the installation, configuration, and testing of the machine. During the installation process, a Gritman employee informed the Beckman technician that the PHI was not printing on the machine-generated

---

[2] EHR systems are used by hospitals to track patients' lab and imaging results and are used by healthcare providers to chart patient records. EHR systems generally contain the entirety of a patient's health record from that healthcare facility. In 2016, when Gritman acquired the DxC 600i, McKesson Corporation, a third party, operated the hospital's EHR management system. Gritman's EHR system is currently operated by AllScripts, which at the time of the filing of the Complaint, was owned by Paragon Direct Services. AllScripts is now known as Veradigm LLC. In this Order, the Court will refer to the EHR company as "AllScripts."

report. The Beckman technician nevertheless assured the Gritman employee that each equation value and subsequent PHI result was being correctly transmitted to Gritman's EHR system.

The Complaint does not indicate whether Beckman offered any kind of warranty for the machine. Nor does it state precisely when the purchase or installation occurred.

### 3.   The Alleged Machine Malfunction

In March 2020, a patient contacted and informed Gritman that the PHI score on the labs he had received from Gritman was incorrect. On March 25, 2020, Gritman began investigating the source of the error. Gritman contacted Beckman, but Beckman was unable to determine where an error may have occurred and could provide no solution. Gritman then contacted AllScripts, the hospital's EHR provider and co-defendant in this case, which proposed two solutions.

Each solution involved altering the way the PHI equation was written in "the system." *Compl*. ¶ 47, Dkt. 1-1. The first suggestion was to change a fraction to a decimal, and the second involved inserting an extra set of parentheses around the entire equation. Both solutions were offered as a way to make the equation translate to the EHR system correctly. However, it is unclear from Complaint whether AllScripts' proposed solutions involved making adjustments within its

own system or to the DxC 600i itself.

Gritman then notified patients that the PHI scores they were provided were incorrect and paid medical expenses for some of those patients. It now seeks to recoup those expenses.

### 4.    Procedural History

On March 15, 2022, Gritman filed a complaint in Idaho state court against Beckman and Allscripts asserting four claims: (1) breach of contract; (2) products liability and failure to warn; (3) equitable or contractual indemnification; and (4) negligence. On September 7, 2022, Beckman timely filed a notice to remove the case to federal court based on diversity jurisdiction. (Dkt. 1). Gritman moved to remand the case to state court, Dkt. 12, but the Court denied that motion (Dkt. 30).

Beckman subsequently filed the present Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which relief may be granted. The motion is fully briefed and before the Court. As explained below, the Court will grant the motion to dismiss, but will allow Gritman to file an amended complaint in accordance with this Order.

### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

A claim is plausible when the plaintiff pleads facts upon which the Court can reasonably infer that the defendant may be liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (internal citation omitted).

A case should be dismissed with leave to amend unless it is doubtless that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Ultimately, the question is not whether a plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## ANALYSIS

### 1.   Breach of Contract

Gritman first alleges that Beckman breached a contract between the two parties by providing Gritman with defective equipment. The Court will dismiss this claim but will give Gritman an opportunity to amend its Complaint.

To succeed on a breach of contract claim, a plaintiff must show (a) the existence of a contract, (b) breach of that contract, (c) damages caused by the breach, and (d) the amount of damages. *Edged in Stone, Inc. v. Nw Power Sys., LLC*, 321 P.3d 726, 730 (Idaho 2014). Gritman's Complaint lacks sufficient allegations as to the first two elements to state a plausible claim for breach of contract.

First, Gritman has not alleged the existence of any contract terms beyond a simple contract to purchase the DxC 600i. The majority of Gritman's Complaint

details the mathematical procedure that the DxC 600i uses to compute PHI scores. According to Gritman, "a fair reading of the particularly stated facts and mathematical equations" in the Complaint are sufficient to show the existence of a contract. But, even assuming Gritman has plausibly alleged the existence of a barebones contract for the purchase and sale of the DxC 600i, that does not end the inquiry, because Gritman is not claiming that Beckman failed to perform *that* contract. Put another way, while Gritman may have alleged the existence of *some* contract, it has not alleged the existence of any contract terms related to the condition, installation, or operation of the DxC 600i.

Second, Gritman has not alleged a breach. It is unclear from the Complaint exactly what Gritman claims Beckman did to breach an agreement between the parties. If the alleged contract was merely for the sale of goods, Gritman has not alleged that Beckman failed to sell it the DxC 600i. If Gritman is claiming that Beckman breached a warranty accompanying the sale of the DxC 600i, it is unclear what the contents of any such warranty were and in what way Beckman failed to comply with the warranty's terms. Although unclear from the Complaint, it is possible that Gritman is claiming that the breach occurred because the PHI scores did not print on "the report" when a "reflex process is run," which in turn diminished Gritman's ability to identify errors. *Compl.* ¶ 27, Dkt. 1-1. But there is

no indication that such printing—as opposed to direct electronic transmittal to the EHR—was part of any contract or warranty between the parties, or was indeed a malfunction rather than a known feature of the DxC 600i.

It is also possible that Gritman is claiming Beckman breached an implied warranty, such as the implied warranty of merchantability or of fitness for a particular purpose. *See* I.C. § 28-2-314 & 315. However, whether these warranties apply and have been breached depends on the details of the transaction itself – details which Gritman leaves out of its Complaint. *See id.* Even granting the reasonable assumption that Beckman is a merchant with respect to the DxC 600i, and therefore inferring that the sale was subject to an implied warranty of merchantability, Gritman has not alleged that the DxC 600i it purchased was unfit for the ordinary purpose for which such machines are used. On the contrary, Gritman has alleged only that some PHI scores provided to patients "were incorrect." *Compl.* ¶ 50, Dkt. 1-1. Moreover, implied warranties may also be eliminated by the parties under certain circumstances, but the Complaint lacks sufficient allegations to indicate whether such circumstances existed. *See e.g.*, I.C. § 28-2-314 & 316.

Ultimately, Gritman's Complaint fails to allege facts plausibly giving rise to any implied warranties and fails to explain how Beckman may have breached any

such warranties. Without purely speculating, the Court cannot identify any plausible claim for breach of an express or implied contract or warranty.

The Court concludes that the complaint lacks sufficient allegations as to (a) the existence of a contract and (b) that Beckman breached such a contract.

## 2. Failure to Warn and Products Liability

Gritman's second claim suffers from the same deficiencies as its first: Gritman fails to plead facts sufficient to show that a products liability action is plausible.

Products liability is a broad doctrine that encompasses three kinds of claims in Idaho: (1) manufacturing defects, (2) design defects, and (3) failures to warn. *Green v. W.L. Gore & Associates, Inc.*, Case No. 4:19-cv-00022-DCN, 2020 WL 5658352, at *2 (D. Idaho Sept. 23, 2020). Gritman has attempted to plead a failure-to-warn[3] claim, which may be based upon negligence or strict liability in tort. *See Puckett v. Oakfabco, Inc.,* 979 P.2d 1174, 1181 (Idaho 1998). A products liability claim based on strict liability concerns the condition of the product after manufacturing and the consumer's associated expectations. *Tuttle v. Sudenga*

---

[3] The terms "failure to warn" and "inadequate instructions" are sometimes used interchangeably to refer to the same kind of claim. Gritman used both terms in its Complaint, but the Court will use the former throughout this Order.

*Indus., Inc.*, 868 P.2d 473, 476 (Idaho 1993). A products liability claim based on negligence is concerned with the conduct and behavior of the manufacturer. *Id.* It appears that Gritman intended to plead a strict products liability claim and a failure-to-warn claim based on negligence, so the Court will address both.

### A.    Strict Products Liability

To succeed on a strict products liability claim, a plaintiff must show that (1) the product in question was defective, (2) the defect existed at the time the product left the manufacturer's control, and (3) the defective product was the proximate cause of the plaintiff's injuries. *Green*, 2020 WL 5658352, at *2. If Gritman is indeed claiming strict products liability, its Complaint nevertheless leaves the Court guessing as to the substance of that claim. The Court sees two possibilities.

First, Gritman might be claiming a design or manufacturing defect in the form of the PHI score not printing "on the report" when the score is calculated. Yet, as explained above, there is no indication that the machine not printing the score was a defect, as opposed to an intentional product design.

Second, Gritman might be claiming that the product was defective because a portion of the PHI equation was being skipped in its calculation. But, again, Gritman has not alleged that skipping did in fact occur, or if it did, that it was due to a problem with the machine. Moreover, strict liability requires that the defect

existed when the product left the manufacturer's control. Under the current facts, there are no indications that the machine was defective when it left the manufacturer's control. To the contrary, the machine was apparently functioning at least until 2020, indicating that any alleged error did not occur at the time the product left the manufacturer's control.

Therefore, the Court cannot identify a plausible claim for products liability under a theory of strict liability.

### B.    Negligent Failure to Warn

In the context of a claim for negligent failure to warn, a product is defective if the defendant "has reason to anticipate that danger may result from a particular use of [its] product and fails to give adequate warnings of such danger." *Puckett*, 979 P.2d at 1181. However, a manufacturer only has a duty to warn when it "knows or has reason to know the unsafe condition of the product when used for the purpose for which it was supplied." *Sliman v. Aluminum Co. of Am.*, 731 P.2d 1267, 1270 (Idaho 1986) (internal quotation marks and citation omitted). Pleading a failure-to-warn claim is a low bar and the claim may be "barebones." *Green*, 2020 WL 5658352, at *4 (citing *Massey v. Conagra Foods*, 328 P.3d 456, 464 (Idaho 2014)). But even under Idaho's "barebones" standard, there is simply no basis in Gritman's Complaint for a failure-to-warn claim to succeed.

Significantly, there is no indication that Gritman used the product in a particular manner that the manufacturer should have warned against. For example, in *Massey v. Conagra Foods*, a consumer sued Conagra Foods after eating a pot pie that was contaminated with Salmonella. 328 P.3d 456, 464 (Idaho 2014). In her complaint for failure to warn, the plaintiff alleged that the pot pie cooking instructions were inadequate because they "failed to ensure that [the] cooking instructions would, if followed by the consumer, kill salmonella and other pathogens." Even though the complaint was "nothing if not concise," the court held that the complaint met the barebones standard of pleading a failure-to-warn claim because it included "certain language" that provided the defendant adequate warnings of the claim against it. *Id.* In other words, the complaint alleged that the defendant had been exposed to Salmonella, and that the cooking instructions did not warn about Salmonella. Thus, the complaint provided sufficient allegations of what warnings the defendant should have but did not provide.

Gritman, on the other hand, simply claims that Beckman "failed to provide adequate instructions and warnings." *Compl.* ¶ 70, Dkt. 1-1. There is no mention of how the DxC 600i was used or should have been used, or in what way Beckman should have warned Gritman regarding its use. Therefore, such a conclusory allegation is insufficient, without factual support, to state a plausible failure-to-

warn claim.

### 3.       Equitable and Contractual Indemnification

Gritman clams both equitable and contractual indemnification. The Court
will address each, in turn.

### A.       Contractual Indemnification

To claim contractual indemnification, a plaintiff must allege the existence of
a "contractual duty to indemnify." *Idaho Wool Growers Ass'n v. Idaho*, 302 P.3d
341, 346 (Idaho 2012). Gritman merely claims that a contract existed, and
therefore that Gritman has a "right to indemnification." *See Plaintiff's Response*, at
*14. But not all contracts include indemnification clauses. Without any allegation
that the parties' alleged contract gave Gritman a right to indemnification, this claim
is not plausible and must be dismissed.

### B.       Equitable Indemnification

Gritman also claims equitable indemnification. The right to equitable
indemnity has been recognized in three situations in Idaho: (1) when the
indemnitee's liability was based on passive neglect and the indemnitor was guilty
of recklessness, (2) when the indemnitee owed only a secondary duty to the injured
party and the indemnitor was primarily responsible; or (3) when the indemnitee
was only vicariously liable. *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d
1159, 1160 (Idaho 1975). Frankly, it is not clear from Gritman's Complaint which,

if any, of these situations may apply.

The idea of equitable indemnity is that, if two tortfeasors have injured a third party, one should not have to pay the entirety of damages while the other gets off scot-free. The right to equitable indemnity has been preserved in Idaho law. I.C. § 6-804(2). "The common law right of indemnity . . . refers to those situations where a person who without fault on his part is compelled to pay damages occasioned by the negligence of another." *May Trucking C. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). To claim equitable indemnity, a plaintiff must allege (1) an indemnity relationship between the indemnitee and indemnitor, (2) actual liability of the indemnitee to the third party, and (3) a reasonable settlement amount. *Chenery v. Agri-Lines Corp.*, 766 P.2d 751, 754 (Idaho 1988).

Gritman has failed to plausibly allege an indemnity relationship. It is not true, as Gritman argues, that merely alleging two tort claims against Beckman is sufficient to establish an indemnity relationship. Indemnity relationships exist only when the tort alleged against the defendant is "not similar in character" to the tort committed by the indemnitee. *See Pinnacle Great Plains Operating Co., LLC, v. Wynn Dewsnup Revocable Trust*, Case No. 4:13-cv-00106-EJL-CWD, 2015 WL 5853139 at *4 (D. Idaho, June 30, 2015) (quoting *Beitzel v. Orton*, 827 P.2d 1160, 1168 (Idaho 1992)). The tort of each respective party must be sufficiently different

in both grade and character to avoid requiring a defendant who is less at fault to indemnify a plaintiff who bears equal or greater fault. In other words, "where the fault of each party is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on that party's wrong." *Id.* Thus, if both parties are equally negligent for a third party's harm, neither party can be expected to indemnify the other.

In *Beitzel*, for example, a motorcyclist sustained injuries when he drove into an unmarked, unbarricaded trench on a public street in Coeur d'Alene, Idaho in the early hours of the morning. 827 P.2d at 1162. The trench was part of a project between the City, General Telephone Company of the Northwest (GTNW), Orton Utilities Construction, Inc. (Orton), and Coeur d'Alene Asphalt (CDAA), to install underground telephone lines. *Id.* Each entity had different responsibilities regarding the trench and street: the City and GTNW were both responsible for discovering and remedying any defect in the street, while Orton and CDAA were responsible for leaving the trench site in a safe condition. *See Pinnacle*, 2015 WL 5853139 at *4. The motorcyclist sued all four entities for negligence. *Id.* The Idaho Supreme Court held that the City and GTNW were entitled to equitable indemnification from CDAA, because although each party was sued for negligence, the character of CDAA's negligence tort was different from what the

City and GTNW were accused of. *Id.* CDAA's negligence was premised on failing to leave the trench in a safe condition for motorists, while the City and GTNW had separate responsibilities to motorists. *Id.*

Here, Gritman makes a general assertion that its two proposed tort claims alone create a sufficient basis for also seeking equitable indemnification. Gritman is wrong for two reasons. First, as explained in this Order, neither of those tort claims were plausibly alleged in Gritman's Complaint, so neither can form the basis of Gritman's equitable indemnification claim. Second, even if it had alleged products liability or negligence, Gritman has not provided sufficient allegations as to its own liability to the third parties to enable the Court to determine whether its liability was similar in grade or character to the liability it seeks to impose on Beckman. Gritman claims only that it "has paid medical expenses for some of [its] patients." *Compl.* ¶ 51, Dkt. 1-1. Nor has Gritman alleged any other form of indemnity relationship.

The Court is therefore unconvinced that Gritman's sparse allegations suffice to pull its equitable indemnity claim across the line from sheer possibility to plausibility.

### 4.   Negligence

Finally, Gritman has not plead facts sufficient for the Court to infer that

Beckman was negligent. To claim negligence in Idaho, a plaintiff must establish four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State, Dept. of Correction*, 158 P.3d 953, 965 (Idaho 2007).

Gritman's negligence claim suffers three deficiencies. First, because of the vague language in the Complaint, it is unclear whether Gritman seeks to assert a tort claim based on a contract violation. The Complaint merely sets forth "negligence" as a general claim. But a plaintiff "cannot maintain a tort claim for violation of a duty . . . created by contract" under Idaho law, and so Gritman's claim would be barred under this theory. *See Burton v. Countrywide Bank, FSB*, No. 1:10–cv–00298–EJL–LMB, 2012 WL 976151, at *14 (D. Idaho Mar. 1, 2012).

Second, Gritman has failed to identify the source of any duty that Beckman plausibly breached. Assuming Gritman is not attempting to allege a duty based in contract, Gritman appears to claim that by creating the PHI equation, Beckman represented itself as an "expert in the field," and Beckman therefore owed "a duty" to Gritman. Beckman counters that merely being an expert in its field does not create any legal duty recognized by Idaho law. The Court agrees. In fact, the tort of negligent misrepresentation, except for limited instances involving accounting, is

not recognized in Idaho. *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1203 (Idaho 1995). Such a bald assertion is therefore simply a legal conclusion couched as authority, and thus fails to meet the *Iqbal* and *Twombly* pleading standard.

Gritman also argues that the installation and setup of the machine created a legal duty. But Gritman fails to identify any duty recognized by law. The Complaint simply alleges that there was "a duty." While possible that installation and setup of a product after purchase creates a duty from the seller to the purchaser, any such duty is not evident in the current Complaint. Because there is also no indication as to how long the machine functioned correctly before apparently malfunctioning, or how many patients' results it may have calculated correctly or incorrectly, the Court cannot infer a breach by Beckman – even if a duty did exist.

Finally, Gritman fails to differentiate Beckman from the other defendants in the case. The Complaint asserts untargeted "negligence" without alleging facts specific to each defendant. Although the standard to survive dismissal under Rule 12(b)(6) is relatively low, Gritman's mere recitation of the elements of negligence without any allegations specific to Beckman falls short. Moreover, because the Court cannot infer the existence of a duty from the Complaint, it cannot infer any breach of duty. Thus, the Court will grant Beckman's motion and dismiss the

negligence claim with leave to amend.

## CONCLUSION

Under the facts as alleged, it is possible that the DxC 600i malfunctioned or was defectively installed. But the *Iqbal* and *Twombly* pleading standard demands more than a mere possibility. At its core, Gritman's Complaint simply claims that a patient received incorrect results, and therefore Beckman should be held liable for damages for each of Gritman's claims. But a bare allegation that patients received incorrect results is not enough to state plausible claims for breach of contract, equitable indemnification, products liability, or negligence. To assume so would improperly accept legal conclusions couched as factual allegations. Nevertheless, Gritman's claims against Beckman are not so lacking that they could not plausibly be saved. The Court will therefore grant Gritman leave to amend its complaint.

## ORDER

**IT IS ORDERED that:**

1.      Defendant's Motion to Dismiss for Failure to State a Claim (Dkt.  8) is **GRANTED**. Each of Plaintiff's claims against Defendant Beckman Coulter is **DISMISSED with leave to amend.**

2.      Any such amendment shall be filed within 30 days after issuance of this Order.

DATED: October 4, 2023

B. Lynn Winmill
U.S. District Court Judge